IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Sherry Beck, <br>                      Plaintiff, <br> vs. <br> Michael J. Astrue, <br> Commissioner of Social Security, <br>                      Defendant. | Civil Action No. 6:11-714-JMC-KFM <br> **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on January 22, 2007, alleging that she became unable to work on November 27, 2006. The application was denied initially and on reconsideration by the Social Security Administration. On August 17, 2007, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Carroll H. Crawford, M. Ed., an impartial vocational expert, appeared on July 13, 2009, considered the case *de novo*, and on September 22, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on January 18, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since November 27, 2006, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: arthritis, obesity, hearing loss, depression, and anxiety (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry/handle up to 20 pounds occasionally and 10 pounds frequently; with no exposure to heights or hazardous machinery; with no climbing or balancing; with no kneeling, crouching or crawling; with no operation of automotive equipment; in a low stress environment with no public contact; and with no excessive noise.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).
>
> 7. The claimant was born on December 22, 1956, and was 49 years old, which is defined as a younger individual age 18-49,

on the alleged onset date. The claimant has subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

8. The claimant has limited education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404. Subpart P, Appendix 2)*.*

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 6, 2006, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **MEDICAL EVIDENCE**

The plaintiff alleges disability commencing November 27, 2006, due to panic disorder, high blood pressure, obesity, hysterectomy, arthritis, and a hearing impairment (Tr. 120).

On June 20, 2002, the plaintiff received hearing aids (Tr. 209). On June 7, 2006, the plaintiff was seen for an audiological evaluation. She wore a hearing aid in her right ear that was providing some benefit. She lost her left hearing aid and was encountering increased difficulty hearing in a multitude of listening situations. She was

5

considered hearing-handicapped in both quiet, one-to-one, and adverse listening situations. The audiologist recommended to Vocational Rehabilitation that they address her current hearing needs accordingly with amplification that could address those listening environments (Tr. 208).

The plaintiff underwent a bilateral salpingo-oophorectomy (surgical removal of the fallopian tubes and ovaries) and an umbilical hernia repair in November 2006 (Tr. 247). Postoperatively, she was limited to no heavy lifting for six weeks (Tr. 245).

At the request of the State agency, the plaintiff's treating gynecologist, Thomas Roesch, M.D., completed a form in January 2007, indicating that the plaintiff had been diagnosed with panic attacks and anxiety, and that her condition was helped with Zoloft (Tr. 306). Dr. Roesch further indicated that the plaintiff did not exhibit any work-related limitation in function due to a mental condition (Tr. 306).

Debra Price, Ph.D., a State agency psychologist, reviewed the medical record in February 2007 and completed a Psychiatric Review Technique form ("PRTF") (Tr. 307-20). Dr. Price found that, under the "B" criteria of the Listing of Impairments, the plaintiff had "mild" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 317). Dr. Price also completed an assessment of the plaintiff's mental functional capacity (Tr. 321-24), concluding that the plaintiff's mental impairments were severe, but did not preclude the performance of simple, routine work activities in a setting away from the general public (Tr. 323).

In February 2007, George Chandler, M.D., a State agency physician, reviewed the medical record and concluded that the plaintiff was capable of performing a wide range of medium work (Tr. 325-32). A second State agency physician, Frank Ferrell, M.D., reviewed the record in May 2007 and also concluded that the plaintiff could perform medium work (Tr. 341-48).

In April 2007, psychiatrist James Page, M.D., evaluated the plaintiff, on referral from Dr. Roesch (Tr. 339-40). Dr. Page diagnosed the plaintiff with panic disorder with history of child abuse (Tr. 340). Dr. Page assigned the plaintiff a global assessment of functioning ("GAF") rating of 65 (Tr. 340), which was indicative of only some mild symptoms.[2] Dr. Page adjusted the plaintiff's medications and advised her to follow up with Dr. Roesch as needed (Tr. 340).

Craig Horn, Ph.D., a State agency psychologist, reviewed the medical record in July 2007 and concluded that the plaintiff's mental impairments were not severe (Tr. 354).

In June 2008, x-rays of the plaintiff's hips and pelvis revealed "very mild" osteoarthritis of the hips and mild scoliosis of the lower lumbar spine (Tr. 385). Also, x-rays of the plaintiff's left knee showed moderately severe osteoarthritis and a small loose body within the medial compartment and moderate osteoarthritis in her right knee (Tr. 391).

In July 2008, Dr. Roesch completed another form at the request of the State agency, indicating that the plaintiff had a mild work-related limitation in function due to a mental condition (Tr. 351).

Psychiatrist Jeffrey Smith, M.D., initially evaluated the plaintiff in August 2008, and diagnosed her with major depression, recurrent episode, severe; and anxiety, not otherwise specified ("NOS") (Tr. 420). Dr. Smith assigned the plaintiff a GAF of 65 (Tr. 420).

The plaintiff saw Paul Siffri, M.D., in October 2008 for complaints of left knee pain. Dr. Siffri noted that the plaintiff was overweight and reviewed new x-rays of the plaintiff's knees, which showed some mild tricompartmental degenerative joint disease.

---

[2]A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders - Text Revision IV* (DSM-IV) (2000), at 34.

7

Physical examination revealed valgus alignment in both knees and range of motion limited by pain. Dr. Siffri injected the plaintiff's left knee with cortisone (Tr. 377-78). At a follow-up office visit in December 2008, the plaintiff stated that she was feeling better, but she had bilateral hip and buttock pain (Tr. 375). On examination, she had negative straight leg raising (Tr. 375). Dr. Siffri noted that June 2008 x-rays of the plaintiff's hip showed no hip arthritis, but some lower lumbar spine degeneration (Tr. 375).

In February 2009, Dr. Smith completed an assessment of the plaintiff's mental ability to do work-related activities, indicating that she was seriously limited or unable to meet competitive standards for even unskilled work (Tr. 412). Dr. Smith also indicated that the plaintiff would be absent from work more than four days per month due to her impairments or treatment (Tr. 413).

## **HEARING TESTIMONY**

At the July 2009 hearing, the plaintiff testified that she was five feet, two inches tall and weighed 240 to 250 pounds (Tr. 28). She had pain in her lower back, left leg, and shoulders. She took Darvocet for pain without side effects, and needed to lay down on a daily basis for pain relief (Tr. 34-35). She took medication for panic attacks, which helped to alleviate her symptoms (Tr. 33-34, 44). She still had depression, however, which caused her to go to bed and remain quiet for ten days a month (Tr. 34, 47). She had hearing aids in both ears (Tr. 38).

The plaintiff testified that she could lift only 5-10 pounds, sit for 20-30 minutes at a time, stand for 10-15 minutes at a time, and walk for 10 minutes at a time. She stated that her hands and arms went numb when she talked on the phone (Tr. 36-38).
The plaintiff testified that she drove once a week, cooked occasionally, and washed dishes (Tr. 28, 39). She watched television, liked to read, and attended church once a week (Tr. 40- 41).

8

**ANALYSIS**

The plaintiff was 49 years old on her alleged disability onset date, November 27, 2006. She has an eighth grade education. The ALJ found that she had the following severe impairments: arthritis, obesity, hearing loss, depression, and anxiety. He further determined that the plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work. The ALJ determined the plaintiff could not perform her past relevant work as a cafeteria worker, cap maker, cashier, door greeter, packer, or telemarketer, but could perform other work that exists in significant numbers in the national economy, such as garment sorter, garment folder, and electronics inspector. The plaintiff argues that the ALJ erred by (1) failing to explain his findings regarding her RFC as required by Social Security Ruling ("SSR) 96-8p; (2) failing to properly assess the treating physician's opinions; and (3) failing to properly assess her credibility.

*Residual Functional Capacity*

The plaintiff first argues that the ALJ erred in his RFC determination. Social Security Ruling 96-8p, 1996 WL 374184, provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

9

As noted by the plaintiff, under the Medical-Vocational Guidelines ("the Grids"), she would be entitled to disability benefits if she were restricted to a range of sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §201.10 (2011). Here, the ALJ found the plaintiff had the RFC to perform a limited range of light work (lift/carry/handle up to 20 pounds occasionally and 10 pounds frequently, with no exposure to heights or hazardous machinery; no climbing or balancing; no kneeling, crouching or crawling; no operation of automotive equipment; low stress environment with no public contact; and no excessive noise) (Tr. 12).

The plaintiff argues that the ALJ erred in failing to address any standing, walking, or sitting restrictions in the RFC assessment even though he determined that she had a severe impairment of arthritis in her knees. The Commissioner argues that the omission is harmless because the ALJ's finding that the plaintiff was capable of a range of light work is supported by the lack of objective evidence, the plaintiff's treatment history, and the opinions of the State Agency medical consultants. However, without an explanation from the ALJ of his findings, it is impossible for this court to determine whether the assessment was based upon substantial evidence. The findings with regard to the plaintiff's standing, walking, and sitting abilities are particularly important where, as here, the plaintiff would be entitled to disability benefits under the Grids if she were restricted to a range of sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §201.10 (2011). Accordingly, upon remand, the ALJ should be directed to explain his assessment of the plaintiff's standing, walking, and sitting abilities and the evidentiary support for each.

***Opinion Evidence***

Secondly, the plaintiff argues that the ALJ failed to properly consider the opinion of her primary treating physician, Dr. Jeffrey Smith. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-

10

exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

In February 2009, Dr. Smith completed an assessment of the plaintiff's mental ability to do work-related activities, indicating that she was seriously limited or unable to

11

meet competitive standards for even unskilled work. Dr. Smith also indicated that the plaintiff would be absent from work more than four days per month due to her impairments or treatment (Tr. 412-13).

The ALJ considered Dr. Smith's February 2009 assessment of the plaintiff's mental limitations and gave Dr. Smith's opinion "little to no weight" (Tr. 17). The ALJ stated as follows:

> Although he is a treating physician, and a psychiatrist, his conclusions that the claimant is essentially incapable of work are not supported by his own treatment notes. His records show that the claimant's panic attacks are controlled on medication, and her depressive symptoms are significantly reduced. His treatment notes simply do not corroborate the severe limitations that he has given the claimant on this form. Furthermore, as indicated earlier, Dr. Smith has assessed the claimant's GAF at 65. This rather high score contradicts his dire ratings of the claimant, including his opinion that the claimant would have absenteeism of more than four days a month.

(Tr. 17-18).

Here, the ALJ appropriately explained the reasoning for the weight given to Dr. Smith's opinion, noting the opinion was not supported by Dr. Smith's own treatment notes, which showed that medication reduced the plaintiff's symptoms (Tr. 415-16). Dr. Smith's assessment also was inconsistent with his August 2008 GAF rating of 65, as well as Dr. Page's April 2007 GAF rating of 65 (Tr. 340, 420). The opinion was also inconsistent with the opinions of Dr. Roesch, the plaintiff's gynecologist, who treated her for panic attacks and anxiety. In January 2007, Dr. Roesch reported that Zoloft helped the plaintiff's condition and she did not exhibit any work-related limitation in function due to a mental condition (Tr. 306). In July 2007, he reported that the plaintiff had a mild work-related limitation due to a mental condition (Tr. 351). The ALJ gave the opinions great weight, noting that while Dr. Roesch was not a psychiatrist, he had treated the plaintiff for several

12

years for anxiety, and his assessments were well-supported by his detailed treatment notes (Tr. 15-16). Based upon the foregoing, this court finds that the allegation of error is without merit.

***Credibility***

The plaintiff also argues that the ALJ failed to properly assess her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The plaintiff alleged that she could lift only 5-10 pounds, sit for 20-30 minutes at a time, stand for 10-15 minutes at a time, and walk for only ten minutes at a time (Tr. 36-37). The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However [her] allegations concerning her impairments, symptoms and the ability to work [were] not substantiated by the total evidence of record and [were] partially credible" (Tr. 14).

While the plaintiff alleged extreme physical limitations due to her impairments, the ALJ pointed out that the record revealed no ongoing physical restrictions recommended by a treating doctor. The ALJ noted that, other than her November 2006 surgery, the plaintiff's medical treatment had been "routine, conservative and typically limited to

14

medication" (Tr. 14). The ALJ also noted that various medications had shown effectiveness in treating the plaintiff's conditions (Tr. 13).

The ALJ further pointed out that while the plaintiff claimed that she needed to go to bed and remain quiet for ten days a month due to severe depression, she never reported such a debilitating symptom to a treating medical source (Tr. 13). The ALJ also found that the plaintiff's reported daily activities were "not representative of a significant restriction of activities or constriction of interests" (Tr. 21). The plaintiff testified that she drove once a week, cooked occasionally, and washed dishes (Tr. 28, 39). Also, she watched television, liked to read, and attended church once a week (Tr. 40-41).

This court finds that the ALJ appropriately considered the above factors in assessing the credibility of the plaintiff's statements. Moreover, his decision contains specific reasons for the finding on credibility, supported by the evidence in the case record. Accordingly, this court finds that the plaintiff's allegation of error in this regard is without merit.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings with regard to the RFC assessment as discussed above.

s/ Kevin F. McDonald
United States Magistrate Judge

May 2, 2012
Greenville, South Carolina